# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| JUAN GAMBOA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | § § § § | |
| V. | § § | A-17-CV-241-RP |
| CITIZENS, INC., RICK D. RILEY, KAY E. OSBOURN, GEOFFREY M. KOLANDER AND DAVID S. JORGENSEN | § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss (Dkt. No. 18); Plaintiffs' Memorandum in Opposition (Dkt. No. 19); and Defendants' Reply (Dkt. No. 20). The District Court referred the motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Lead Plaintiffs Juan Gamboa and Correy Hemingway bring this class action lawsuit pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of persons who purchased or otherwise acquired securities sold by Defendant Citizens, Inc. Citizens is a Colorado insurance company that sells whole-life insurance policies primarily to foreign customers in South America and Taiwan and maintains its headquarters in Austin, Texas.

Plaintiffs allege that Citizens operates an independent network of 3,000 foreign sales consultants who sell whole-life insurance policies to foreign customers in an effort to avoid regulation in the United States. Plaintiffs contend that Citizens trains its sales force to use unlawful

growth projections regarding Citizens' stock to steer foreign policyholders into the Citizens Stock Investment Plan, where policy dividends are automatically used to purchase Citizens stock. Based on these promised outsized returns, the majority of the Citizens' common shares are owned by foreign policyholders who continue to purchase shares automatically under the Plan as dividends are paid on the policies, artificially propping up Citizens' stock price.

For much of its history, Citizens' had claimed that its life insurance policy proceeds and dividends were exempt from U.S. taxes. In 2015, however, Citizens announced that a "substantial portion" of its life insurance policies "do not qualify for the favorable U.S. federal income tax treatment" under Section 7702 of the Internal Revenue Code. Accordingly, almost all of the life insurance policies Citizens sells to foreigners are now subject to U.S. laws and deemed taxable. Despite this, Plaintiffs allege that "Citizens continues to market and sell policies as tax-exempt to foreign customers because it requires, in Ponzi-like fashion, a constant influx of new foreign customers to purchase the Company's stock." Dkt. No. 14 at ¶ 6. Plaintiffs reason that:

> If Citizens sales force were to disclose to foreign customers that they will have to pay U.S. income taxes on their policy benefits, then none of these customers would purchase a policy, and existing customers would either abandon or cash in their policy. This, in turn, would reduce the artificially created demand for Citizen's stock through the Plan. Simply put, the scheme would end and Citizens' business would fail.

*Id.*

Plaintiffs contend that since the Section 7702 tax issue was disclosed in 2015, Defendants have attempted to suppress, cover up and delay the fraudulent scheme. For example, Plaintiffs allege that Citizens fired its Chief Financial Officer three weeks into his tenure when he refused to sign off on Citizens' financial disclosures. Plaintiffs contend that Citizens failed to disclose to its investors that it was under investigation by the Securities and Exchange Commission and the Internal Revenue

2

Service. Plaintiffs allege that Citizens' fraudulent scheme was uncovered on March 8, 2017, when Seeking Alpha published an article exposing Citizens' unlawful business practices, and noting that it was under SEC and IRS investigation. Citizens disclosed in its 2016 Annual Report that it was reconsidering the viability of selling policies in international markets. As a result, Citizens stock prices sharply declined.

On March 16, 2017, Plaintiffs filed this proposed class action complaint against Citizens, Chief Executive Officers Harold E. Riley,[1] Rick D. Riley, Kay E. Osbourn and Geoffrey M. Kolander, and Chief Financial Officer David Jorgensen (the court will refer to all defendants collectively as "Citizens"). Plaintiffs' lawsuit alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Plaintiffs also allege violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

## II. LEGAL STANDARD

Citizens moves to dismiss, arguing that Plaintiffs' First Amended Complaint fails to meet the pleading requirements of the Private Securities Litigation Reform Act. The PSLRA requires a securities fraud plaintiff to meet a higher pleading standard than plaintiffs must meet in other cases. Among other things, the statute requires the plaintiff to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). The plaintiff must also "state

---

[1] Defendant Harold E. Riley died on September 21, 2017. Accordingly, on March 20, 2018, the District Court dismissed all of Plaintiffs' claims against Mr. Riley. See Dkt. No. 24.

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § (b)(2)(A). And because the complaint here alleges fraud, the requirements of Rule 9(b) apply to this case. That rule requires that allegations of fraud be made with particularity by identifying the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994) (internal citation and alterations omitted).

### III. ANALYSIS

Plaintiffs allege that Defendants violated Section 10(b) of the Exchange Act, which prohibits the "use or employ[ment] . . . of any . . . deceptive device . . . in connection with the purchase or sale of any security," and "in contravention of" SEC "rules and regulations." 15 U.S.C. § 78j(b). The regulation promulgated to effect the last prong of the statute, Rule 10b-5, forbids, among other things, the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5(b).

There are six elements to a private securities fraud claim,[2] and Citizens' motion to dismiss attacks the sufficiency of Plaintiffs' complaint on several of them. Though the Court agrees with several of these arguments, it need only focus on one of them —scienter—to dispose of this motion. As just noted, the PSLRA requires a plaintiff to plead "with particularity facts giving rise to a *strong inference* that the defendant acted with" scienter. 15 U.S.C. § 78u–4(b)(2) (emphasis added). The

---

[2]They are: "(1) a material misrepresentation (or omission), (2) scienter, i.e., a wrongful state of mind, (3) a connection with the purchase or sale of a security, (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'; (5) economic loss; and (6) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 238-39 (5th Cir. 2009) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

4

Supreme Court has explained that a complaint will meet this standard only if the inference of scienter is "cogent and compelling" and "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). This requires allegations that the defendant acted with "an intent to deceive, manipulate [or] defraud," or "with severe recklessness." *Owens v. Jastrow*, 789 F.3d 529, 535-36 (5th Cir. 2015) (quoting *Lormand*, 565 F.3d at 251). "Severe recklessness" remains a very high standard. It requires specific allegations of "highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003). The Fifth Circuit has also

> rejected the group pleading approach to scienter and instead look[s] to the state of mind of the individual corporate official or officials who make or issue the statement . . . rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir.), *cert. denied*, 558 U.S. 873 (2009) (internal citations omitted).

Though the Court will not address Citizens' arguments on the sufficiency of Plaintiffs' fraud allegations, the Court will briefly summarize them to frame the scienter discussion. Plaintiffs place the false statements into five categories: (1) statements regarding the stock investment plan; (2) statements concerning internal controls; (3) statements related to Rick Riley's departure; (4) statements concerning government investigations; and (5) statements concerning strategic initiatives. Almost all of the challenged statements were made by Citizens in public SEC filings. *See* Dkt. No. 14 at 23-33. Though the pleadings provide little detail regarding precisely what makes

5

the statements false, the Plaintiffs' primary complaint is that they allegedly failed to disclose enough information. As Plaintiffs summarize their claim in the First Amended Complaint:

> In sum, the statements contained in ¶¶ 89-111 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company had additional, undisclosed material weaknesses in its internal control over financial reporting and disclosure controls; (2) Citizens' sales force was using false growth projections to entice policyholders to invest dividends into the Plan; and (3) the Company's business practices, relying on new policyholder investments to guarantee the returns for existing policyholder investments and inflate the Company's stock price, were unsustainable and starting to deteriorate, particularly in light of the Company's decision not to remediate foreign policies in light of the Section 7702 determination and the Company's decision to slash dividend rates for policyholders. As a result, Defendants' statements about the Company's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

*Id.* at ¶ 112.

The reason the Court sets out this information is to highlight the fact that the Plaintiffs' fraud allegations are entirely based on the premise that, while Citizens *did* disclose negative information concerning the Section 7702 issues, the stock investment plan, disclosure controls, internal controls over financial reporting, and related matters, in the Plaintiffs' view it did not disclose *enough* information to make the statements not misleading. In such a situation, for a plaintiff to adequately plead a "cogent and compelling" case for scienter, she must show more than that it is debatable whether the disclosures were adequate. As one court has observed, "[t]o infer scienter from an arguably material omission, in the face of allegations that cut against such an inference, and in the absence of valid motive allegations, would be to expand the anti-fraud provisions of the securities laws beyond their intended scope." *In re GeoPharma, Inc. Secs. Litig.*, 411 F. Supp. 2d 434, 448 (S.D.N.Y. 2006). Or, as another noted, even if the complaint relies on arguably misleading

statements, when the sufficiency of the challenged disclosures is "at least debatable" the complaint fails to support a strong inference of scienter. *Sanders v. AVEO Pharm., Inc.*, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015). In another case, Judge Scheindlin concluded that alleged omissions where insufficient to support an inference of scienter when it was "arguable that [the defendants] did not have a duty to disclose [the] information before they actually did." *In re Centerline Holdings Co. Secs. Litig.*, 613 F. Supp. 2d 394, 404 (S.D.N.Y. 2009).

Here, the facts pled demonstrate that every one of Citizen's allegedly misleading statements was reviewed by independent outside auditors. This is evidence supporting the inference that Citizens was not acting with an intent to defraud and mislead, but rather that they had reason to believe the disclosures were adequate. And Plaintiffs' rebuttal that Ernst & Young resigned as Citizens' auditor in 2017 (Dkt. No. 19 at 26-7) does not support the inference Plaintiffs suggest. As Citizens' notes, there is no evidence that, as Plaintiffs contend, Ernst & Young "part[ed] ways with Citizens over business practices." *Id.* Rather, as Citizens points out, it made the required SEC filing, disclosing that its auditor was resigning. The relevant rule requires that in reporting the resignation of an auditor, the registrant:

> State whether during the registrant's two most recent fiscal years and any subsequent interim period preceding such resignation, declination or dismissal there were any disagreements with the former accountant on any matter of accounting principles or practices, financial statement disclosure, or auditing scope or procedure, which disagreement(s), if not resolved to the satisfaction of the former accountant, would have caused it to make reference to the subject matter of the disagreement(s) in connection with its report.

*See* 17 C.F.R. § 229.304(a)(1). Citizens' 8-K announcing the resignation reported no such disagreements, and Ernst & Young's letter that is part of the filing confirmed that it agreed with that statement. Dkt. No. 20-5. This evidence supports the inference that Citizens believed the disclosures

7

were adequate. At a minimum, it belies the inference that Plaintiffs want to draw, and places the statements squarely in the range of being "at least debatably" sufficient. Because more is needed to show scienter under the PSLRA, this suggests the Plaintiffs' pleadings are insufficient.

Further evidence supports the inference that Citizens did not act with scienter. As Citizens notes, Plaintiffs have failed to allege that any officer or director of the company sold stock or otherwise profited from the alleged misrepresentations. Plaintiffs respond by arguing that "insider stock sales . . . are not required to allege scienter." Dkt. No. 19 at 24 n.13. But that is not the point. Though such allegations are not required, their absence supports an inference opposing the claim that a defendant acted with scienter. As the Eleventh Circuit has noted, the lack of suspiscious stock activity "weighs against inferring scienter." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1253 (11th Cir. 2008). The Second Circuit has similarly observed that the lack of allegations of insider sales requires that the strength of pro-scienter allegations be "correspondingly greater." *ECA v. JP Morgan Chase Co.,* 553 F.3d 187, 198–99 (2d Cir.2009). And the Ninth Circuit has held that when there are no suspicious stock sales, the more plausible inference to draw is not that the defendant acted with scienter, but rather "that there was no insider information from which to benefit." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir.2008). *See also Plumbers Local #200 Pension Fund v. Washington Post Co.*, 930 F. Supp. 2d 222, 227 (D.D.C. 2013) (the "lack of any tangible, personal benefit . . . weighs against the Officer Defendants having scienter"). The very same is the case here.

In response to these problems, Plaintiffs point mainly to the allegations made by two former high level Citizens employees. Plaintiffs allege that the statements in the First Amended Complaint relating to FE 1 and FE 2 show that the allegedly misleading omissions were intentional, and were

8

done to attempt to cover up wrongdoing. The First Amended Complaint alleges that FE 2, Citizens' former Chief Financial Officer, was concerned with the Section 7702 tax issue and raised those concerns with then-CEO Osbourne. Plaintiffs allege that FE 2 was terminated shortly thereafter, when he refused to sign off on Citizens' financial disclosures for the third quarter of 2015. While one inference to draw from these allegations is that FE 2 was terminated because he had uncovered something Citizens wished not to disclose, that is not the most natural inference from all of the facts pled in the First Amended Complaint. As the Plaintiffs' own pleading reflects, Citizens publicly disclosed the Section 7702 tax issue six months *before* FE 2 began working at Citizens. Further, Citizens updated its estimated range of liability and its reserve pertaining to the Section 7702 issue in every quarterly and annual SEC filing since its initial disclosure of the issue. So the more natural inference to draw from FE 2's termination is not that Citizens was trying to silence him, but rather his view of what was required in the SEC filings differed from other executives, and, more importantly, the auditors who signed off on those filings. As the Court has already noted, even when disclosures are only "arguably adequate," that is not enough to meet the heightened scienter pleading standard of the PSLRA.[3]

Finally, Plaintiffs' allegations regarding FE 1, Citizens' former Vice President and Chief Actuary, are not enough to solve this problem. Indeed, FE 1 did not even work at Citizens during the purported class period. Further, the only mention of FE 1 in Plaintiffs' opposition relates to the claim that "the sales team at Citizens was permitted to input any stock projection information they wanted into marketing documents and spreadsheets provided to their clients." Dkt. No. 19 at 5, 15.

---

[3]None of the above takes into account the fact that FE 2 only worked at Citizens for 25 days, which further undermines the strength of any negative inference that might be drawn from his allegations.

9

They attempt to relate this to their allegation that Citizens' disclosures regarding weaknesses in its "data validation and management review controls over key spreadsheets and system-generated reports" were inadequate. But as Citizens points out, the disclosure at issue was made in April 2017, Dkt. No. 14 at ¶ 116, and FE 1 was terminated more than two years before this. Moreover, the claim FE 1 is making involves stock projections made by sales people, which has nothing to do with Citizen's internal controls over financial reporting. As Citizens points out, the only connection between the two events is the common use of the term "spreadsheet." Because they are unrelated, FE 1's concerns about the validity of sales people's projections is not probative of Citizens' state of mind when it made disclosures about its internal controls on its financial reporting. Finally, as Citizens also notes, this allegation—attempting to connect FE 1's claims about salesmen's stock projections to the company's 2017 disclosure about weaknesses in its financial reporting—is not mentioned in the First Amended Complaint, but rather is raised for the first time in the opposition. It is thus not something the Court should consider on the motion to dismiss.

The PSLRA requires a very high level of pleading detail and enough facts to result in a strong inference of scienter. 15 U.S.C. § 78u–4(b)(2) (plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"). Plaintiffs' pleadings fail to meet this standard. Ordinarily, when a complaint is deficient, before the court dismisses, it will give the plaintiff an opportunity to cure the defects with an amended pleading. But Plaintiffs have already amended twice, and it is clear that the problems noted above cannot be cured by yet another amendment. When this is the case, the Court must dismiss the complaint. *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 407 (5th Cir. 2001) ("The PSLRA also provides that if a plaintiff does

not [carry its burden of pleading], the district court 'shall,' on defendant's motion, 'dismiss the complaint.'").

## IV. RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Dkt. No. 18), and dismiss the case with prejudice.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of May, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE